UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ADAM BRENT WALLACE** <br> **REG. # 219036** | : | **CIVIL ACTION NO. 2:18-cv-0018** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court are a Motion for Summary Judgment [doc. 48] filed by the government and a Motion to Dismiss and Motion for Summary Judgment [doc. 49] filed by the individual defendants in this matter. This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court.

**I.**
**BACKGROUND**

This suit arises from alleged delays in Wallace's medical care while he was an inmate in the custody of the Bureau of Prisons ("BOP"), during his incarceration at the Federal Correctional Institution at Oakdale, Louisiana ("FCIO"). Doc. 5. Specifically, he alleges that he was denied follow-up treatment for hemorrhoids due to the negligence of defendants Mary Thomas and Joe Alexander. *Id.* He seeks relief through a suit filed in this court under *Bivens v. Six Unknown Named*

*Agents*, 91 S.Ct. 1999 (1971),[1] against Alexander and Thomas and under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, against the United States government.

The government now moves for summary judgment, asserting that the record reveals Wallace received adequate care at FCIO. Doc. 48. The individual defendants also move for summary judgment, asserting that (1) Wallace cannot establish that they were deliberately indifferent to his serious medical needs and (2) they are shielded from liability by the doctrine of qualified immunity. Doc. 49; doc. 49, att. 1. Alternatively, they seek dismissal under Federal Rule of Civil Procedure 12(b)(6) by claiming Wallace has not exhausted his administrative remedies for his *Bivens* claims. Wallace has not filed a response to either motion, but instead submits a statement of issues [doc. 53] in addition to the "Response" [doc. 45] he submitted to the individual defendants' answer.

## II.
## LAW & APPLICATION

### A. Failure to Exhaust

#### 1. Legal Standards

Because the individual defendants' Motion to Dismiss was filed after they appeared and filed an answer in this suit [doc. 42], it is properly considered as a Rule 12(c) motion for judgment on the pleadings rather than a Rule 12(b)(6) motion to dismiss. Additionally, because defendants' motion relies on evidence outside the pleadings (namely, a declaration from BOP employee Ashlee

---

[1] Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. A *Bivens* action is the counterpart for those acting under color of federal law for a suit brought under § 1983. *E.g.*, *Abate v. Southern Pacific Transp. Co.*, 993 F.2d 107, 110 n. 14 (5th Cir. 1993); *see also Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980) ("The effect of Bivens was, in essence, to create a remedy for federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials.")

Welch), the court converts it to a motion for summary judgment and reviews it under the standards of Rule 56. *E.g.*, *Wright v. La. Corrugated Prods., LLC*, 59 F.Supp.3d 767, 773 (W.D. La. 2014).

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### *2. Application*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring a suit with respect to jail conditions without exhausting available administrative remedies. 42 U.S.C. § 1997e(a). This requirement is mandatory and extends to *Bivens* suits based on prison conditions. *Jones v. Bock*, 127 S.Ct. 910, 918–19 (2007); *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017). The PLRA "requires proper exhaustion," meaning that prisoners must complete the administrative review process in accordance with applicable procedural rules under that process. *Woodford v. Ngo*, 126 S.Ct. 2378, 2387 (2006); *Jones*, 127 S.Ct. at 922. The Fifth Circuit takes a "strict approach" to this issue and holds that "mere substantial compliance" with administrative remedies will not satisfy the exhaustion requirement. *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003); *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

Here the defendants submits a declaration from BOP employee Ashlee Welch, who states that she has reviewed Wallace's administrative remedy records. Doc. 49, att. 2, pp. 1–2. Based on that review, Welch shows that Wallace's attempts at administrative review for his medical care claim were rejected by the BOP's Central Office on November 3, 2017, because he did not include a copy of his lower level filings. *Id.* at 2; *see id.* at 25 (administrative remedy record). Wallace was told that he could respond within fifteen days but failed to do so. *Id.* Because of Wallace's failure to properly appeal to the Central Office, Welch states, he has not properly exhausted his administrative remedies. *Id.* at p. 3.

Wallace contends that he did not receive the regional office's response and so should be excused from the exhaustion requirement. Doc. 53, pp. 4–5. He does not contend, however, that he never received a response from the Central Office. He also offers no excuse for failing to timely respond or properly appeal. *See id.* His release from federal custody in April 2018 has no bearing

on his ability to meet these November 2017 deadlines. Accordingly, he fails to rebut the defendants' showing of noncompliance or to offer any grounds for excuse and his *Bivens* claims must therefore be dismissed for failure to exhaust. Because Wallace is now procedurally barred from properly exhausting his claims, the dismissal should be with prejudice. The court therefore has no need to consider the defendants' other arguments against Wallace's *Bivens* claims.

### B. *FTCA Motion for Summary Judgment*

The government contends that it is entitled to summary judgment on the FTCA claims, under the standards described above, because Wallace cannot establish any negligence by BOP providers in his medical care. Doc. 48.

Because the alleged negligence occurred in Louisiana, Louisiana law applies to determine the government's liability under the FTCA. *Sewell v. United States*, 629 F.Supp. 448, 451 (W.D. La. 1986) (citing 28 U.S.C. § 1346(b)). To prevail on a claim of medical malpractice under Louisiana law, a plaintiff must show (1) the applicable standard of care, (2) a breach of that standard care by the provider, and (3) that, as a proximate result of this breach, the plaintiff suffered injuries that would not otherwise have occurred. La. Rev. Stat. § 9:2794(A). Injury alone does not create a presumption of negligence. *Id.* at § 9:2794(C); *e.g.*, *Pugh v. Beach*, 722 So.2d 442, 445 (La. Ct. App. 2d Cir. 1998). Expert testimony is generally required to establish malpractice, "except where the negligence is so obvious that a lay person can infer [it] without the guidance of expert testimony." *Johnson v. Morehouse Gen. Hosp.*, 63 So.3d 87, 96 (La. 2011).

Wallace's FTCA suit is based on a delay in treatment of internal hemorrhoids identified during a colonoscopy performed on October 8, 2015. Doc. 5, pp. 3–4. The operative report indicated that the colonoscopy was performed after Wallace was referred to the surgeon for evaluation of his colon, and noted his history of polyps. Doc. 48, att. 2, p. 5. The procedure showed

no evidence of tumor, stricture, bleeding, or polyps. *Id.* at 2, 5. Wallace received a follow-up appointment at FCIO Health Services on his return that day, where he was counseled on the procedure. *Id.* at 6–8. The records from that appointment also showed that the surgeon had requested a follow-up appointment in three weeks. *Id.* at 7. Wallace contends that he was approved for a follow-up colonoscopy on October 14, 2015, but FCIO records show that the follow-up was requested "to discuss findings." Doc. 5, p. 3; doc. 48, att. 2, p. 7.

The follow-up appointment evidently did not occur, as Wallace reported when returning to Health Services for a sick call on January 8, 2017. Doc. 48, att. 2, p. 10. At an appointment two days later he complained of intermittent exacerbation of his internal hemorrhoids. *Id.* He did not report any pain but noted recent dark stools, rectal itching, and occasional bleeding after bowel movements. *Id.* A surgical consult was scheduled for May 16, 2017, and Wallace was told to follow up at sick call as needed and return immediately if his condition worsened. *Id.* at 11. In the intervening period, Wallace was prescribed multiple medications, including pain relievers and milk of magnesia. *Id.* at 13.

At the surgical consult Wallace complained of pain and rectal bleeding at least once a week. *Id.* at 16. The surgeon diagnosed Wallace with Grade III hemorrhoids and recommended that he receive a colonoscopy and hemorrhoidectomy. *Id.* at 16–17. At a Health Services clinical encounter the following week, the target date for the procedure was set for August 23, 2017.[2] *Id.* at 17. Wallace claims that he developed an external hemorrhoid in August 2017, but there is no record of any clinical encounter after May 2017. Doc. 5, p. 4. Wallace was transferred from FCIO to a halfway house in Mississippi on October 25, 2017, without receiving the

---

[2] Wallace was also evaluated that month by a urologist for an unrelated complaint. Doc. 48, att. 2, pp. 19–21. The urologist noted no anal fissures, external or internal hemorrhoids, or lesions. *Id.* at 21.

colonoscopy/hemorrhoidectomy. *Id.*; doc. 48, att. 2, p. 3. He states that he finally underwent the procedure in December 2017, while at the halfway house. Doc. 5, pp. 4–5.

Even though the post-operative appointment from the October 2015 procedure never occurred, the record only shows a delay in any prescribed treatment from May through October 2017, when Wallace left the care of FCIO providers. Though Wallace now asserts that he suffered physical pain and mental anguish during the entire period from his October 2015 colonoscopy to his December 2017 hemorrhoidectomy, he made no visits to sick call until January 2017 and did not complain of any pain at that visit or his surgical consult. A delay of less than six months in scheduling surgery, especially in an institutional setting and where there is no evidence that the hemorrhoids were life-threatening, that the defendants failed to treat Wallace's symptoms in the interim, or that the condition caused pain sufficient to make Wallace seek additional medical care, does not rise to the level of self-evident medical malpractice. Wallace fails to designate an expert or put forth any other evidence to support his claims, and so the motion for summary judgment must be granted.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion to Dismiss [doc. 49] be **DENIED**, that the individual defendants' Motion for Summary Judgment [doc. 49] be **GRANTED**, and that the government's Motion for Summary Judgment likewise be **GRANTED**. Accordingly, all claims in this matter should be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and

Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

    THUS DONE AND SIGNED in Chambers this 28th day of February, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE